154 So.2d 161 (1963)
YOO KUN WHA, also known as Kun Wha Yoo, also known as Fred Thompson, Petitioner,
v.
Thomas J. KELLY, the Sheriff of Dade County, Florida, Respondent.
No. 32216.
Supreme Court of Florida.
March 27, 1963.
Petition for Clarification and Modification Denied June 25, 1963.
*162 Perry Nichols, Miami, for petitioner.
Richard W. Ervin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for respondent.
SEBRING, Justice (Ret'd).
The petitioner was indicted in Dade County by a grand jury summoned and empanelled in accordance with the provisions of Chapter 25554, Laws of 1949. By original habeas corpus he questions the legality of his detention under the indictment, which was found and returned by a grand jury consisting of 18 grand jurors. The contention of the petitioner is that while at the time of the passage of Chapter 25554 it was concededly a valid general law of uniform operation throughout the state, it had lost this quality and had become, at the time the indictment was returned in 1962, a local law applicable only to Dade County, by reason of the fact that by various repealing statutes enacted in 1961 the Legislature had exempted and excluded from the operation of the act all counties in the state to which Chapter 25554 had theretofore been applicable.
If the petitioner's contention is sound his detention pursuant to the indictment is illegal, because, by the provisions of sections 20 and 21 Article III, Constitution of Florida, F.S.A., the matter of summoning and empanelling grand juries in Florida may be regulated only by a general law of uniform application throughout the state.
Before the enactment of Chapter 25554, Laws of 1949, the only provisions for summoning and empanelling grand juries in Florida were those embodied in Section *163 905.01 Florida Statutes, F.S.A., which provides:
"Every grand jury shall consist of not less than fifteen, nor more than eighteen persons, the assent of at least twelve of whom shall be necessary for the finding of any indictment. * * *"
In 1949, Chapter 25554, Laws of 1949, which contained the following provisions, was enacted:
"Section 1. In all counties having a population of 315,000 or more according to the last State or Federal Census, the grand jury shall consist of twenty-three jurors; provided that after a grand jury of twenty-three is empanelled and convened, fifteen members of such grand jury shall constitute a quorum and may transact business, and an indictment or presentment shall be found and returned only upon the concurrence of twelve or more grand jurors. * * *"
The constitutional validity of Chapter 25554 Laws of 1949 was upheld in Clein v. State (1950) Fla., 52 So.2d 117, and Lightfoot v. State (1952) Fla., 64 So.2d 261, the court being of the opinion that the act was a valid general law, because it was based upon a reasonable classification according to population and was not arbitrary or unreasonable in respect to the subject matter dealt with in the act.
After the enactment of Chapter 25554, Laws of 1949, there were in Florida two separate and distinct general laws, each governing, within the sphere of its operation, the summoning and empanelling of grand juries.
In 1951, the Legislature enacted Chapter 26664 Acts of 1951, entitled "An Act to Fix and Provide the Number of Grand Jurors to Constitute a Grand Jury, to Constitute a Quorum of the Grand Jury and to Find and Return an Indictment or Presentment, in Counties Having a Population of 225,000 or More According to the Last State or Federal Census." The wording of this act is identical with the wording in Chapter 25554, except for the insertion of a population figure of "225,000" in place of the population figure of "315,000" which appeared in the 1949 act.
Since, so far as we are advised, the constitutionality of Chapter 26664, Laws of 1951, has never been questioned in any court, we will assume, for the purposes of this hearing, that it is a valid general law of uniform operation throughout the State. We also hold, contrary to the contentions of the Attorney General, that the 1951 act did not supersede or supplant Chapter 25554, Laws of 1949, but operated merely as an amendment thereto by enlarging the scope of its application. Forbes v. Board of Health of Escambia County, 27 Fla. 189, 9 So. 446; Fla. Cent. & P.R. Co. v. Foxworth, 41 Fla. 1, 25 So. 338; State ex rel. Buford, Atty. Gen. v. Watkins, County Clerk, 88 Fla. 392, 102 So. 347; Orange County v. Robinson (1933), 111 Fla. 402, 149 So. 604.
In 1961 the Legislature attempted by five local laws enacted after publication of notice to exclude Duval, Hillsborough, Broward, Orange and Palm Beach Counties from the operation of a great many existing laws and to repeal such laws as to such counties. See Chapters 61-796, 61-1468, 61-558, 61-1442, and 61-1413, General Laws of 1961. Specifically designated in the Duval County law, Chapter 61-796, as a statute to be repealed, is Chapter 25554, Laws of 1949. Specifically designated in the Orange and Palm Beach County laws as a statute to be repealed, is Chapter 26664, Laws of 1951. Specifically designated in the Hillsborough and Broward County laws as statutes to be repealed are Chapter 25554, Laws of 1949 and Chapter 26664, Laws of 1951.
Also enacted during the 1961 session of the Legislature was Chapter 61-577, Laws of 1961, a population act, which was apparently passed to accomplish for the counties coming thereunder the same purposes *164 as were sought to be accomplished by the aforementioned local laws for the counties named therein. So far as is material here, Chapter 61-577, General Laws of 1961, provided, as follows:
"Section 1. This act applies in all counties having a population of not less than three hundred fifty thousand (350,000) inhabitants, and not more than three hundred eighty-five thousand (385,000) inhabitants, according to the latest official decennial census.
"Section 2. Chapter * * * 25554, 1949; * * * chapter 26664, 1951; * * * Laws of Florida, are repealed insofar as they may relate to the aforesaid population bracket. * * *"
Incidentally, Pinellas County, with a population of 374,665 inhabitants according to the official Federal census of 1960, was the only County in the state directly affected by Chapter 61-577, at the time of its passage.
It is upon this set of facts that the petitioner questions the legality of the indictment, returned by a panel of 18 grand jurors selected from a 23-man "venire" summoned and empanelled in pursuance of Chapter 25554, General Laws of 1949. It is his contention that since the local laws, Chapters 61-796, 61-1468, 61-558, 61-1442 and 61-1413, General Laws of 1961, have exempted and removed Duval, Hillsborough, Broward, Orange and Palm Beach Counties from the operation of Chapter 25554, Laws of 1949, as amended by Chapter 26664, Laws of 1951, and the population act, Chapter 61-577, Laws of 1961, has accomplished the same result as to Pinellas County and other counties of the State that through an increase in population may grow into the population bracket described therein, there are no counties in the State, except Dade County, that are subject to the provisions of the 23-man grand jury act and hence that Chapter 25554, Laws of 1949, as amended, has become, in legal effect, a local law dealing with a subject matter that under the Florida Constitution may be regulated only by a general law of uniform operation throughout the State. See sections 20 and 21, Article III, Constitution of Florida.
It is an elementary principle of statutory construction that in the determination of the constitutionality of acts of the legislature courts should give to each enactment a construction that will uphold an act rather than invalidate it, if there can be found any reasonable basis for so doing. Assuming, therefore, but not deciding that the pertinent local laws and population act enacted by the 1961 session of the legislature did, in fact, repeal Chapter 25554 Laws of 1949 as amended by Chapter 26664, Laws of 1951, as to the counties named or included therein, the effect of this series of enactments upon Chapter 25554 Laws of 1949, as amended by Chapter 26664, is that Duval, Hillsborough, Broward, Orange and Palm Beach Counties, and "all counties having a population of not less than * * * (350,000) inhabitants, and not more than * * * (385,000) inhabitants, according to the latest official decennial census" have been removed from the operation of Chapter 25554 Laws of 1949, as amended. But this does not necessarily render Chapter 25554, as amended, void or translate it from a general law of uniform operation throughout the State into a local law applicable only to Dade County. The statute is still operative, even after the counties named in the 1961 acts have been eliminated, not only as to Dade County but also as to all other counties in the State that now have, or in the future may have, a population count of not less than 225,000 or more than 349,999, and not less than 385,001, inhabitants, according to the latest "official decennial census." And it is apparent from the official Federal census of 1960, of which we take judicial notice that there are several counties of the State potentially within the new population brackets of amended Chapter 25554, Laws of 1949, as amended by the 1961 acts.
*165 This, we think is sufficient to satisfy the rule that "within reasonable limits, the Legislature may classify counties for governmental purposes according to population for the purpose of enactment of general laws and where a proper and reasonable classification is made according to population or otherwise such act will nevertheless be regarded as a general law and not as a special or local law, even though the result is an act whose operation is confined to a single county falling between two specified populations." Anderson v. Bd. of Public Instruction for Hillsborough County (1931), 102 Fla. 695, 136 So. 334; Givens v. County of Hillsborough, 46 Fla. 502, 35 So. 88, 110 Am.St.Rep. 104.
The fact that under the provisions of Chapter 61-577, Laws of 1961, the "population act" presently applicable only to Pinellas County, all counties of the state (except Duval, Hillsborough, Broward, Orange and Palm Beach) that will eventually achieve a population of 225,000 and will thereby come under the operation of Chapter 25554, as amended, will thereafter be excluded when they reach the population count of 350,000, and then will not be brought back into its provisions until they exceed a population of 385,000 according to the last "official decennial census," does not alter our opinion that Chapter 25554, as amended, is a general law, within the contemplation of sections 20 and 21, Article III, Constitution of Florida, and not a local law applicable only to Dade County. Compare Budget Commission of Pinellas County v. Blocker, Fla., 60 So.2d 193.
Indeed, even if Chapter 25554 Laws of 1949, as amended by Chapter 26664, Laws of 1951, had been so emasculated by the operation of the 1931 acts that only counties of the population size of Dade County would have presently remained, it still would not be too difficult to uphold Chapter 25554, as amended, as a general law, within the purview of sections 20 and 21, Article III of the Florida Constitution. For, according to the 1960 Federal census, Dade County has almost one-million inhabitants, which is more than twice as many as any other county in the State. In Lightfoot v. State, Fla., 64 So.2d 261, this court said, in upholding the constitutionality of Chapter 25554 Laws of 1949, before it was amended by Chapter 26664, Laws of 1951 so as to include counties with populations of not less than 225,000 inhabitants: "It is a matter of common knowledge * * * that crime is more rampant  its volume greater  in metropolitan than in less heavily populated areas. It is for the legislature to determine when and where governmental functions will best be served by a general law based upon population so long as other counties are potentially within the population figure. Certainly other counties than the one now affected are well within the reach of the population provisions of Chapter 25554. We cannot say that the legislature acted arbitrarily in increasing the number of grand jurors in counties having a population of over 315,000 persons. On the contrary, it seems assured the legislature intended by increasing the number of grand jurors that the grand jury would be able to function more expeditiously in the larger counties of this State wherein grand juries are required to be in session almost continuously. In counties wherein a grand jury is necessarily in session a great deal of the time it would work a hardship upon the members of the grand jury to be almost constantly away from their businesses or vocations and * * * it is entirely reasonable and appropriate to have a grand jury `venire' consisting of a greater number of grand jurors than in smaller counties. * * *"
In respect to the holding in State v. Lightfoot, supra, it could well be that after observing the workings of Chapter 25554, Laws of 1949, as amended by Chapter 26664, Laws of 1951, in the more populous counties for a period of 10 to 12 years, the Legislature concluded that although the system was presently performing a legitimate function in large metropolitan areas *166 of the population size of Dade County it was serving no useful or necessary purpose in the smaller counties with population ranges from 225,000 up to the population count of Duval County, the State's next largest county. Certainly, it is within the power of the Legislature to lower, or if advisable at a later time, to raise the population dividing line between classes in classification laws enacted for the purpose of regulating governmental activities, so long as there are valid public considerations justifying the particular classifications and distinctions made. And there is nothing within our judicial knowledge to suggest that if the counties which have been excluded by the 1961 laws from the operation of the act ever attain a population which, in the opinion of the Legislature, will justify their inclusion in an act providing for a 23-man grand jury system in all counties with, roughly, one-million inhabitants, the legislature will not repeal the 1961 acts which involve them and bring these counties back under such legislation.
While the artificial and indirect method employed by the Legislature to establish a new and restricted population bracket for the future operation of the 23-man grand jury act may raise questions as to the validity of the local laws and population act by which the new classification is attempted, the rule is that "[w]hen a classification of counties for governmental purposes based upon population or otherwise is made by the Legislature in the enactment of general laws for governmental purposes in regard to the counties classified, if any state of facts can reasonably be conceived that will sustain the classification attempted by the Legislature, the existence of that state of facts at the time the law was enacted will be presumed by the courts, and the deference due to the legislative judgment in the matter will be observed in all cases where the court cannot say on its judicial knowledge that the Legislature could not have had any reasonable ground for believing that there were public considerations justifying the particular classification and distinction made." Anderson v. Bd. of Public Instruction for Hillsborough County, 102 Fla. 695, 136 So. 334.
The conclusion we have reached in this regard does not infringe upon any guaranties of "due process" or "equal protection of the laws;" for, as stated by the United States Supreme Court, in State of Missouri (Bowman) v. Lewis, 101 U.S. 22, 25 L.Ed. 989, a case cited with approval in Sawyer v. State, 94 Fla. 60, 113 So. 736:
"* * * there is nothing in the Constitution to prevent any state from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances * * *." [Italics ours.]
"The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of the line there may be a right to trial by *167 jury, and on the other side no such right. Each State prescribes its own mode of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities in different parts of the same state. A uniformity which is not essential as regards different states cannot be essential as regards different parts of a state, provided that in each and all there is no infraction of the constitutional provision. Diversities which are allowable in different states are allowable in different parts of the same state. Where part of a state is thickly settled, and another part has but few inhabitants, it may be desirable to have different systems of judicature for the two portions  trial by jury in one, for example, and not in the other. Large cities may require a multiplication of courts and a peculiar arrangement of jurisdictions. It would be an unfortunate restriction of the powers of the State government if it could not, in its discretion, provide for these various exigencies * * *."
We are of the opinion that the conclusions reached herein dispose of all grounds upon which the petitioner seeks release from detention under the indictment returned pursuant to Chapter 25554 Laws of 1949 as amended. Accordingly, the writ of habeas corpus heretofore issued herein should be quashed and the petitioner remanded to the custody of the respondent to be held under the indictment for further proceedings in accordance with law.
It is so ordered.
TERRELL, THOMAS, THORNAL and CALDWELL, JJ., concur.
ROBERTS, C.J., concurs in judgment.
O'CONNELL, J., dissents.